**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

**DANIEL ANTHONY WEYMOUTH,**
        **Petitioner**

**v.**                                              **Civil Action No. 2:04cv603**
                                                    **Criminal Action No. 2:03cr82**

**UNITED STATES OF AMERICA,**
        **Respondent.**

## ORDER  AND OPINION

Currently before the court is Daniel Anthony Weymouth's petition to vacate, set aside or correct a sentence previously imposed, pursuant to Title 28, United States Code, Section 2255. The petition is timely within the requirements of the Antiterrorism and Effective Death Penalty Act of 1996, 110 Stat. 1214 (1996).  The petitioner argues that he received ineffective assistance of counsel, that the United States breached its plea agreement with petitioner, and that his sentence was unconstitutionally enhanced based on crimes of which he was not found guilty and did not plead guilty.  Because the record conclusively demonstrates that the petitioner is not entitled to relief, the court declines to hold an evidentiary hearing.  See R. Governing § 2255 Proceedings in U.S. Dist. Cts. 8(a).  For the reasons set forth below, Weymouth's petition is **DENIED**.

I.      **Factual Background**

Petitioner was charged with five felony counts resulting from a conspiracy to distribute 3,4-methylenedioxymethamphetamine (MDMA), 3,4-methylenedioxyamphetamine (MDA) (both

commonly known as Ecstasy), and Phencyclidine (PCP): Count One, conspiracy to distribute

MDMA, MDA, and PCP, in violation of Title 21, United States Code, Section 846; Count Three,

possession with intent to distribute of PCP and MDA, in violation of Title 21, United States

Code, Section 841(a)(1); Count Four, possession with intent to distribute of MDMA, in violation

of Title 21, United States Code, Section 841(a)(1); and Counts Five, Six, and Seven, possession

of controlled substances, in violation of Title 21, United States Code, Section 844.  Pursuant to a

written plea agreement with the government, petitioner pleaded guilty to Count One of the

indictment on July 25, 2003.  As part of the plea agreement, the court dismissed Counts Three,

Four, Five, Six, and Seven against petitioner.

On November 17, 2003, petitioner filed his position with respect to the presentence

report.  He objected to the Probation Officer's calculation of his offense level as a 30, and argued

that statements he made after entering into the plea agreement should be believed instead of those

that he made immediately after he was arrested and waived his Miranda rights.  Specifically,

petitioner objected to the calculation of the drug weights, claiming that he had simply been

"puffing" when he initially told police officers that he had made between ten and twenty trips to

New York to purchase MDMA and that each time he would return with between 500 and 1,000

pills.

Petitioner claimed that, in debriefing with a Secret Service Agent after his guilty plea had

been accepted by this court, he revised his estimate for the number of MDMA pills he obtained

from his trips to New York.  Petitioner claimed that he would only purchase 300 pills on each

trip and had only made approximately five trips to New York.  The total number of pills he had

brought back from his trips to New York, according to petitioner, was only around 1,500, not the

2

5,000 or more that he had previously claimed.  The presentence report had estimated the total number of pills obtained by petitioner from his New York trips at 5,500, which corresponded to nine trips with 500 pills and one trip with 1,000 pills, and his sentencing guideline range had been calculated accordingly.  If petitioner's post-plea agreement statements were to be taken as the truth, his guideline range would then drop, as his offense level would fall from 30 to 28. Petitioner's argument was based on U.S.S.G. § 1B1.8(a), which provides that where a defendant cooperates with the government by providing information on criminal activity of others and the government agrees to not use any self-incriminating evidence provided by the defendant against himself, the information will not be used in determining the defendant's sentencing guideline range.  The plea agreement reached between the United States and petitioner had specifically provided that no information that petitioner provided pursuant to the agreement would be used against him.  Petitioner, however, argued that the information he provided wasn't being used against him, and that therefore it should be considered when calculating his sentencing guideline range.

On November 26, 2003, the United States filed its position with respect to sentencing factors, agreeing with the recommendation of the presentence report while at the same time moving this court to grant an additional one-level reduction in his offense level for acceptance of responsibility.  On December 5, 2003, this court sentenced petitioner to 124 months imprisonment, based on an adjusted offense level of 25 and a criminal history category of VI. The sentencing guideline range for petitioner's offense level and criminal history was 110-137 months.

3

## II.       Procedural History

On October 7, 2004, petitioner filed the instant petition, asking this court to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.  He subsequently amended his petition on November 1, 2004.  Petitioner asserts that he is entitled to resentencing based on three grounds: that his counsel provided ineffective assistance to him, that the United States breached the plea agreement by failing to consider his post-plea statements in sentencing, and that his sentence was imposed in violation of the Sixth Amendment, as it was enhanced for crimes to which he did not plead guilty and was not found guilty.  Petitioner further requests that should his request for a corrected sentence be denied, he be allowed to withdraw his guilty plea.

This court ordered the United States to respond to his petition on October 19, 2004.  The United States filed its response on November 24, 2004, wherein it urged the court to deny petitioner's motions.  Petitioner filed a reply to the United States on December 5, 2004.

## III.       Standard of Review

A petitioner collaterally attacking his sentence or conviction bears the burden of proving that his sentence or conviction was imposed in violation of the United States Constitution or laws, that the court was without jurisdiction to impose such a sentence, that the sentence exceeded the maximum authorized by law, or that the sentence otherwise is subject to collateral attack.  28 U.S.C. § 2255.  An evidentiary hearing is not required in this case because the case file, along with the court's recollection of the case, are adequate to dispose of the matter.  See R. Governing § 2255 Proceedings in U.S. Dist. Cts 8(a); Blackledge v. Allison, 431 U.S. 63, 74 n.4 (1977).

4

A collateral attack under § 2255 is far more limited than an appeal. The doctrine of procedural default bars the consideration of a claim that was not raised at the appropriate time during the original proceedings or on appeal. A collateral challenge is not intended to serve the same functions as an appeal. United States v. Frady, 456 U.S. 152, 165 (1981). There are two instances, however, when a procedurally defaulted claim may be considered on collateral review. The first instance is when a petitioner shows both cause and actual prejudice resulting from the alleged error. Id. at 167. See also Wainwright v. Sykes, 433 U.S. 72, 84 (1977); United States v. Mikalajunas, 186 F.3d 490, 492-95 (4th Cir. 1999). The petitioner must demonstrate "that the error worked to his 'actual and substantial disadvantage,' not merely that the error created a 'possibility of prejudice.'" Satcher v. Pruett, 126 F.3d 561, 572 (4th Cir. 1997) (quoting Murray v. Carrier, 477 U.S. 478, 494 (1986)). Alternatively, if a petitioner can demonstrate that he is actually innocent, then the court should also issue a writ of habeas corpus in order to avoid a miscarriage of justice, regardless of whether the claim was procedurally defaulted. See Schlup v. Delo, 513 U.S. 298, 321 (1995). A claim of ineffective assistance of counsel may, however, be properly brought on a § 2255 petition. United States v. DeFusco, 949 F.2d 114, 120-21 (4th Cir. 1991). In the instant case, the petitioner has not alleged that he is actually innocent of the crimes for which he was convicted, therefore he must demonstrate both cause and prejudice as a result of the errors he alleges.

## IV.    Analysis

A.    Ineffective Assistance of Counsel

The Sixth Amendment provides, in relevant part, that: "In all criminal prosecutions, the

accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. CONST. amend. VI. The Sixth Amendment right to counsel includes the right to the effective assistance of counsel. Strickland v. Washington, 466 U.S. 668, 686 (1984). The Supreme Court's standard for assessing ineffective assistance of counsel claims is "highly deferential." Id. See Kimmelman v. Morrison, 477 U.S. 365, 382 (1986) (discussing the Strickland standards). There are two prongs to the Strickland test: performance and prejudice. To establish a claim for ineffective assistance of counsel, petitioner must prove both: (1) that his attorney's conduct fell below an objective standard of reasonableness; and (2) that the attorney's deficient performance caused him prejudice. Strickland, 466 U.S. at 687-91.

Actual prejudice is demonstrated by showing "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would be different." Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. Under Strickland, "there exists a strong presumption that counsel's conduct was within a wide range of reasonably professional conduct, and courts must be highly deferential in scrutinizing counsel's performance." Kratsas v. United States, 102 F. Supp. 2d 320, 322 (D. Md. 2000) (citing Strickland, 466 U.S. at 688-89). Most importantly, the burden of proof lies with the petitioner. United States v. Allgood, 48 F. Supp. 2d 554, 558 (E.D. Va. 1999). A petitioner's conclusory statements will not suffice to prove that there is a reasonable probability that the outcome of his trial would have been different in the absence of his counsel's alleged errors.

A petitioner who alleges ineffective assistance of counsel following a guilty plea has an even higher burden to meet. See Hill v. Lockhart, 474 U.S. 52, 59 (1985); Fields v. Attorney Gen. of Md., 956 F.2d 1290, 1297-98 (4th Cir. 1992). Such petitioner must demonstrate "that

there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59. An inquiry into whether a petitioner has presented enough evidence to demonstrate such a reasonable probability will often necessitate an inquiry into the likely results at trial. Id. at 59-60. In evaluating a claim of ineffective assistance of counsel made after a guilty plea, statements made under oath, such as those made in a Rule 11 proceeding, are binding on the petitioner "[a]bsent clear and convincing evidence to the contrary." Fields, 956 F.2d at 1299. That a plea bargain is "favorable" to a defendant and that accepting it was "a reasonable and prudent decision" is evidence of the "voluntary and intelligent" nature of the plea. Id.

In the instant case, petitioner alleges that his attorney provided ineffective assistance when she informed him of the significant probability that the United States would seek to introduce evidence of his prior criminal activity, which result would have been an increase in the appropriate sentencing guidelines. His allegation is based on a letter that his attorney, Jennifer T. Stanton, sent to him on July 15, 2003, in which she advised petitioner that if his case went to trial, the government would file a notice of intent to increase his sentence, pursuant to 21 U.S.C. § 851, which if accepted would result in a minimum sentence of twenty years were petitioner to be convicted at trial. Attorney Stanton further advised petitioner that it was in his best interests to plead guilty, whether he was willing to cooperate with the government or not.

Petitioner claims that Attorney Stanton's letter directed him to the wrong subsection of the statute under which he was charged, resulting in his decision to accept a plea agreement and plead guilty. Attorney Stanton has submitted an affidavit in which she asserts that her letter of July 15 did not state that petitioner faced any minimum sentence under 21 U.S.C. § 841(b)(1)(A).

The United States has made the same assertion.  However, it is clear from the reading of the letter and the underlined portion of the attached photocopy that Attorney Stanton was directing petitioner's attention to the possibility of mandatory imprisonment of at least 20 years and that the photocopy is of a section of § 841(b)(1)(A).  The text of the letter states: "[l]astly, if you go to trial the government will most definitely file an 851 notice of intent to increase your potential penalties (see highlighted part of enclosed statute).  That would mean your statutory low end would be 20 years, and the maximum would be life."  Attachment to Petition.

Attached to the July 15 letter were two photocopies: one of the relevant portion of 21 U.S.C. § 851, which notes the procedure the government must take to file an information to have a sentence increased based on prior criminal convictions; the other highlighting specific language under 21 U.S.C. § 841(b)(1)(A), which notes that if a defendant is convicted under that subsection after having previously committed a felony drug offense, he will be subject to a mandatory minimum term of imprisonment of 20 years.  This language had been underlined and starred.  Petitioner claims that because he stood to be convicted under 21 U.S.C. § 841(b)(1)(C), based on the drugs found on his person at the time of his arrest, his attorney mistakenly informed him of potential penalties that were too high, resulting in his decision to plead guilty.  It appears as if Attorney Stanton was in error in highlighting the portion of § 841(b)(1)(A) which indicated that petitioner could face a mandatory minimum sentence of 20 years imprisonment, as the indictment clearly states the petitioner was charged under § 841(b)(1)(C).  However, because petitioner failed to allege this error at his sentencing or on appeal, his claim is in procedural default and he must therefore demonstrate both cause and prejudice for not bringing these issues on appeal or at an earlier proceeding.

8

Petitioner alleges that were it not for his counsel's error in informing him that he was facing a mandatory minimum sentence of 20 years, he would not have pleaded guilty and would have continued to trial.  In support of this, petitioner notes that his attorney had filed a motion to suppress evidence obtained at the time of his arrest.  He claims that because his counsel only sent him a copy of a portion of 21 U.S.C. § 841(b)(1)(A), he was unaware and had no reason to be aware that it was the incorrect statute until he had already entered his guilty plea.  Although the page of the statute that was copied and sent to petitioner does not indicate that it is 21 U.S.C. § 841(b)(1)(A), it does indicate that the mandatory minimum sentence for conviction under that subsection, without introduction of a prior felony drug offense, is 10 years.  The plea agreement between the United States and petitioner, on the first page, indicates no minimum sentence under the statute to which petitioner was pleading guilty.  Petitioner signed the agreement and initialed each page, indicating to the court at the Rule 11 hearing that he had read and understood it in its entirety.  As petitioner has not alleged that he was lying at the Rule 11 hearing, he was clearly on notice that there was either an error in his counsel's advice to him or in the plea agreement itself.  That he failed to raise the claim at the Rule 11 hearing is evidence that he would not have continued to trial had his attorney not erred.

Petitioner's asserted reliance on a single misstatement by his attorney is belied by the numerous indications that he was aware of the charges against him in the indictment.  At the Rule 11 hearing, petitioner advised the court that he had received a copy of the indictment against him and that he had read and understood it.  The indictment clearly indicates that the charge brought against petitioner in Count One was brought under 21 U.S.C. § 841(b)(1)(C). Nowhere in any of her correspondence with petitioner did Attorney Stanton directly state that

petitioner was being charged under § 841(b)(1)(A).  Although there is no doubt that the July 15 letter, when read with the attached statute, implies that petitioner was facing a longer sentence than was actually the case, this is merely evidence that petitioner's attorney had miscopied the statute and relied on her mistake in writing the letter.  It is certainly not evidence that she failed to understand the indictment against petitioner.  When considered in its totality, her performance falls within the wide range of reasonably professional conduct that <u>Strickland</u> permits, and therefore petitioner has failed to meet the performance prong of <u>Strickland</u>, 466 U.S. at 688-89.

Attorney Stanton's affidavit also refers to two other letters that she sent to petitioner, one on June 20, 2003, and the other on June 25, 2003.  The letter of June 20 notes a "rough estimate" as to the application of the sentencing guidelines to petitioner's claim should he decide to accept a plea agreement.  Specifically, it estimates that under U.S.S.G. § 2D1.1, petitioner would receive 28 points for drug weight, and under U.S.S.G. § 3E1.1, he would receive a 2- or 3-point reduction for acceptance of responsibility.  The letter of June 25 indicates that if petitioner qualifies as a career offender under U.S.S.G. § 4B1.1, his initial offense level would be 32, with either a 2- or 3-point reduction for acceptance of responsibility.  The letter also notes that whether petitioner qualifies as a Career Offender was yet to be determined, as he had multiple prior convictions in different states, which could conceivably have satisfied the requirements for § 4B1.1.

In the letters from both June 20 and June 25, Attorney Stanton advised petitioner that his sentencing range after pleading guilty, should he not be categorized as a Career Offender, was likely to be 120-150 months, if his criminal history category was judged to be a VI, or 110-137 months, if his criminal history was a V.  She also advised petitioner that his sentencing range

could possibly be 140-175 months or more if he rejected a plea agreement and proceeded to trial. According to petitioner, he had decided to go to trial based on the estimation of 140 to 175 months, but the letter of July 15, which indicated that he would face a minimum of 20 years if he proceeded to trial and was convicted, persuaded him to accept a plea agreement.

Even assuming that Attorney Stanton's error was cause enough for petitioner to accept a plea agreement rather than risk trial, it simply does not rise to the level of prejudice required under the Strickland and Hill standards. Petitioner has not asserted his innocence of the crime for which he was convicted, and in fact stated in his reply to the United States' response that he would not insult this court's intelligence by claiming actual innocence. That petitioner was prepared to proceed to trial indicates that he was willing to risk up to 175 months imprisonment were he convicted of the crime to which he eventually pleaded guilty. Although there is no mandatory minimum sentence under § 841(b)(1)(C) when enhanced by a prior felony drug conviction, the statutory maximum increases from 20 years to 30 years. Petitioner was on notice that the government would file an information under § 851, and he clearly knew or should have known that such a filing, if it had any effect, would only result in an increased sentence were he to be convicted. Although petitioner failed to qualify as a Career Offender under U.S.S.G. § 4B1.1, and it does not appear that his sentencing range would have been enhanced by grouping his charges together under U.S.S.G. § 3D1.1, the United States would still have had the opportunity to move for an upward departure at petitioner's sentencing. See U.S.S.G. § 4A1.3. Because § 851 increased the maximum sentence petitioner could face under 21 U.S.C. § 841(b)(1)(C) from 20 to 30 years, a motion for upward departure could have resulted in a sentence of up to 30 years imprisonment.

11

Whether his sentence would have been for longer than 20 years had these events occurred is impossible to determine, but it is clear that had he proceeded to trial and been convicted, his sentence would have been longer than the one he actually received.   It is therefore impossible for petitioner to demonstrate that, had his counsel not erred in advising him of the potential penalties he faced, the result would have been more favorable for him.   Not only would petitioner's sentence be enhanced by the filing of a § 851 notice, but he would not have received the three-point reduction in his offense level for acceptance of responsibility.   He therefore would have faced, at a minimum, 140 months imprisonment if convicted.   Because he pleaded guilty, however, he received only 124 months imprisonment.   It is twisted logic to claim that one is prepared to spend at least 140 months in prison, but not be satisfied with a sentence of 124 months.   Yet this is what petitioner would have the court believe.

At numerous times, petitioner has acknowledged that he is in fact guilty of the crime for which he was convicted.   He reiterates this admission in his reply to the government's response to his habeas petition, and therefore this court has no reason to speculate as to his actual innocence.   Petitioner therefore has not met the prejudice prong of the Strickland test, because he cannot demonstrate a reasonable probability that he would have proceeded to trial had he been fully apprised of the possible sentence he might face.   He is unable to demonstrate that, if he proceeded to trial and was convicted, his sentence would be shorter than the term he was sentenced to after his guilty plea.

Although petitioner claims that his counsel's deficient performance caused him prejudice in that he would have gone forward to trial had he been fully apprised of the possible sentence outcomes, he has not offered any evidence indicating a reasonable probability that but for his

12

counsel's errors, he would not have pleaded guilty and would have instead insisted on proceeding to trial.  In light of his criminal history and the nature of the offenses with which petitioner was charged, the plea agreement was very favorable to him, and it is clear that any sentence imposed by this court after a conviction at trial would not have been as lenient.  Therefore, it is clear that petitioner's claim does not meet the prejudice prong of the Strickland test.  Accordingly, petitioner's claim of ineffective assistance of counsel is dismissed.

B.      Breach of Plea Agreement

        The doctrine of procedural default bars a claim that was not raised at the appropriate time during the original proceedings or on appeal.  That an appeal was waived is not a defense to failure to raise a claim at the appropriate time.  In the instant case, petitioner failed to raise his claim of breach of plea agreement at his sentencing.  He must therefore show both cause and prejudice in order for this court to consider the claim on collateral review.  United States v. Frady, 456 U.S. 152, 165 (1981).  See also Wainwright v. Sykes, 433 U.S. 72, 84 (1977); United States v. Mikalajunas, 186 F.3d 490, 492-95 (4th Cir. 1999).

        In the plea agreement reached between petitioner and the United States, paragraph 7 provides, in relevant part:

> The United States agrees not to use any truthful information provided pursuant to this agreement against the defendant in any other criminal prosecution against the defendant in the Eastern District of Virginia.  Pursuant to Section 1B1.8 of the Sentencing Guidelines, no truthful information that the defendant provides pursuant to this agreement will be used to enhance the defendant's guideline range.

Plea Agreement, ¶ 7 (Doc. No. 13).

Petitioner claims that this portion of the plea agreement was breached when post-plea agreement statements were used by this court in determining the appropriate sentencing guideline range.

13

However, petitioner's sentence was actually *reduced* as a result of the admission of the statements he made to the Secret Service Agent in debriefing after he had entered into the plea agreement.

The presentence report prepared by the Probation Officer recommended an offense level of 30. At the sentencing, petitioner testified that his statements to the police at the time of his arrest were inaccurate. Petitioner urged the court to consider his statements to the Secret Service Agent, and the court made a finding of an offense level of 28, lower than that recommended by the presentence report. On cross-examination, petitioner admitted that he had acknowledged during the post-guilty plea debriefing that he had obtained 1,000 pills of MDMA from sources in Virginia Beach, Virginia. These 1,000 MDMA pills attributed to him were not included in the presentence report, which had calculated that he had procured 5,500 MDMA pills over several trips to New York. Although this court, to the benefit of petitioner, found that he had obtained 2,000 MDMA pills from New York, it also included the 1,000 locally-obtained MDMA pills in calculating the combined drug weight which was attributed to petitioner at sentencing. Petitioner assert that were it not for the inclusion of those 1,000 MDMA pills, which was information provided by him pursuant to his cooperation with the government, his offense level would be reduced by two points, and his sentencing range would fall to 92-115 months. As petitioner was sentenced to 124 months imprisonment, he urges that his sentence was nine months beyond the maximum permissible under the appropriate guideline and that this satisfies the requirement of actual prejudice.

Petitioner's claims, however, are misguided. The source of specific MDMA pills is immaterial to the calculation of the total number of pills attributed to petitioner. In this case, the

presence report estimated 5,500 MDMA pills, and at sentencing the petitioner succeeded in having that number reduced to 3,000 pills. That the presentence report may have been in error as to the source of the MDMA pills does not change the fact that petitioner acknowledged having at least 3,000 pills, and was sentenced accordingly.

The only information provided by petitioner subsequent to his guilty plea and used to affect his sentence was used to *reduce* his sentence. Had petitioner been sentenced based on the amount of drugs attributed to him in the presentence report, he would have faced 130 to 162 months imprisonment. Because this court made a finding that attributed petitioner with a lesser quantity of drugs, it is clear that he received nothing but a benefit from the introduction of his post-plea statements. Petitioner is clearly not challenging the admissibility of those statements that reduced his sentencing range, because they worked to his clear advantage. He cannot demonstrate cause for failing to raise this issue on appeal or at an earlier point. Further, he cannot demonstrate that, had he raised the issue earlier, the result would have been any different. Petitioner's claim of breach of the plea agreement by the United States is therefore dismissed.

C.     Sentencing Enhancements

Finally, petitioner submits that his sentence was unconstitutionally enhanced by the inclusion in the computation of his sentencing guideline of various crimes for which he did not plead guilty and was not found guilty. Specifically, petitioner alleges that because Count One of the indictment, the only count to which he pled guilty, discussed only 186 specific pills, the attribution to him of 2814 additional pills during sentencing violated his right to have the elements of his crime proven by a jury of his peers. Although petitioner only in passing mentions Blakely v. Washington, 124 S.Ct. 2531 (2004), his claim is clearly based on a reading of that

15

case.  This court will therefore consider petitioner's claim under the standard outlined in <u>Blakely</u> and <u>United States v. Booker</u>, 125 S.Ct. 738 (2005).

In <u>Blakely</u>, the Supreme Court extended its ruling in <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000).  In <u>Apprendi</u>, the Court held that a judge may not increase a sentence above the statutory maximum unless that sentence is based on the factual findings of the jury or the admissions of the defendant.  <u>Id.</u> at 483.  The Court in <u>Blakely</u> reasoned that, for the purposes of <u>Apprendi</u>, the statutory maximum is not the maximum possible sentence for a crime, but only the maximum sentence that could be imposed based on the factors that were determined beyond a reasonable doubt by a jury or admitted by the defendant.  <u>Blakely</u>, 124 S.Ct. at 2537.

The Court in <u>Blakely</u> addressed the sentencing guidelines used by the state of Washington, and specifically declined to address whether its holding applied to the federal sentencing guidelines.  <u>Id.</u> at 2538 n.9.  The Court subsequently, in <u>Booker</u>, applied the holding of <u>Blakely</u> to the federal sentencing guidelines, determining that the mandatory nature of the guidelines violated the Sixth Amendment for the reasons stated in <u>Blakely</u>, but that Congress would have preferred an advisory guideline scheme to none at all.  <u>Booker</u>, 125 S.Ct. at 745, 756.  Thus, even though this petition was filed prior to the Court's decision in <u>Booker</u>, it is that decision, as opposed to <u>Blakely</u>, that is applicable to petitioner's sentence under the federal sentencing guidelines.

Because petitioner is collaterally attacking his final sentence, the court must determine if the rule announced in <u>Booker</u> may retroactively apply to the petitioner.  Retroactivity comes into play where a criminal defendant has been found guilty and his conviction has become final prior to the announcement of the new rule.  <u>See</u> <u>Lilly v. United States</u>, 342 F. Supp. 2d 532, 535 (W.D.

Va. 2004).  A conviction is final if "'the judgment of conviction was rendered, the availability of appeal exhausted, and the time for petition of certiorari ha[s] elapsed.'"  Teague v. Lane, 489 U.S. 288, 295 (1989) (quoting Allen v. Hardy, 478 U.S. at 258 n.1 (1986)).

Petitioner's conviction clearly became final prior to the decision in Booker, and therefore he must show that the Supreme Court decision he wishes to take advantage of announced a new rule and the new rule is retroactive on collateral review.  See id. at 308.  A decision announces a new rule if the "result was not dictated by precedent existing at the time the defendant's conviction became final."  Id. at 301.  Although Blakely and Booker stemmed from the Court's holding in Apprendi, it does not appear that the result in Booker was dictated by precedent.  The application of Apprendi to the sentencing enhancements in the guidelines was not foreseen by the courts of appeals after the Supreme Court decided Apprendi.  See e.g., United States v. Sanders, 247 F.3d 139, 150 (4th Cir. 2001) (holding that the court can enhance sentences on the basis of judicially determined facts so long as the statutory maximum is not exceeded); Lilly, 342 F. Supp. 2d at 537 n.3 (citing similar decisions from the other courts of appeals).

Assuming then, that the decision announced in Blakely and extended to the federal sentencing guidelines in Booker was a new rule, there is only a narrow class of cases to which the new rule will apply retroactively on collateral rule.  See Schriro v. Summerlin, 124 S.Ct. 2519, 2522 (2004).  The petitioner must either show that the new rule is substantive, rather than procedural, or that the new rule is a "watershed rule of criminal procedure."  Id. at 2523.

It is undisputed that the rule announced in Booker is procedural rather than substantive.  No conduct that was forbidden prior to Booker is permitted today.  Booker only "regulates the manner of determining the defendant's culpability."  Summerlin, 124 S.Ct. at 2523.  Booker does

not involve the substantive determination of what conduct is lawful or unlawful.  Moreover, the

rule announced in Apprendi, 530 U.S. 466 (2000), upon which Booker relied, has been

determined to constitute a procedural rule that does not apply retroactively on collateral review.

See Summerlin, 124 S.Ct. at 2523; Sanders, 247 F.3d at 151 (finding that the rule announced in

Apprendi does not apply retroactively on collateral review).

A procedural decision may apply retroactively if it establishes one of the rare "watershed

rules of criminal procedure implicating the fundamental fairness and accuracy of the criminal

proceeding."  Summerlin, 124 S.Ct. at 2523; Teague, 489 U.S. at 311 (1989).  In order to

constitute such a rule, the decision must "so seriously diminish 'accuracy that there is an

impermissibly large risk' of punishing conduct the law does not reach."  Summerlin, 124 S.Ct. at

2525 (quoting Teague, 489 U.S. at 312-13).

The rule announced in Booker is not such a watershed change.  As the Seventh Circuit

has recently described:

> Booker does not in the end move any decision from judge or jury, or change the burden of
> persuasion.  The remedial portion of Booker held that decisions about sentencing factors
> will continue to be made by judges, on the preponderance of the evidence, an approach
> that comports with the [S]ixth [A]mendment so long as the guidelines system has some
> flexibility in application.

McReynolds v. United States, 397 F.3d 479, 481 (7th Cir. 2005).

There is nothing in either Blakely or Booker to suggest that the Supreme Court intended

to overrule the numerous cases holding that Apprendi does not apply retroactively on collateral

review.  This determination is in accord with numerous other courts that have addressed the issue

of retroactivity, either in the immediate wake of the Blakely decision, or following the more

recent decision in Booker.  See id.; Lilly, 342 F.Supp. at 538-39 n.5 (citing the cases).  Each

18

circuit that has addressed the issue of retroactivity in the wake of Booker has determined that the rule announced in that decision is not applicable on collateral review.  See Lloyd v. United States, 407 F.3d 608, 616 (3d Cir. May 17, 2005); Guzman v. United States, 404 F.3d 139, 144 (2d Cir. Apr. 8, 2005); United States v. Price, 400 F.3d 844, 849 (10th Cir. Mar. 8, 2005); Humphress v. United States, 398 F.3d 855, 863 (6th Cir. Feb. 25, 2005); Varela v. United States, 400 F.3d 864, 868 (11th Cir. Feb. 17, 2005); McReynolds, 397 F.3d at 491.  See also United States v. Johnson, 353 F. Supp. 2d 656, 657-58 (E.D. Va., Jan. 21, 2005).

Booker is therefore not retroactively applicable to petitioner's sentence.  Accordingly, his claim that his sentence was unconstitutionally enhanced by factors of which he was not found guilty and did not plead guilty is dismissed.

D.      Withdrawal of Guilty Plea

Petitioner requests that, if his petition to amend his sentence is not granted, that he be permitted to withdraw his guilty plea, pursuant to FED. R. CRIM. P. 32.[1]  A petition requesting permission to withdraw his guilty plea must be considered in light of the six-factor test articulated in United States v. Moore, 931 F.2d 245 (4th Cir. 1991): (1) whether the defendant has offered credible evidence that his plea was not knowing or voluntary; (2) whether the defendant has credibly asserted his legal innocence; (3) whether there has been a delay between the entering of a plea and the filing of the motion; (4) whether the defendant has had close assistance of competent counsel; (5) whether withdrawal will cause prejudice to the government; and (6) whether it will inconvenience the court or waste judicial resources.  Id. at 248.

---

[1]It should be noted that it appears that withdrawal of his guilty plea is the only relief that would satisfy petitioner's claim of ineffective assistance of counsel, as he alleges that, were it not for his attorney's error, he would not have pleaded guilty and would have proceeded to trial.

Although petitioner alleges that his plea was made neither knowingly nor voluntarily, his statements under oath at the Rule 11 hearing, in which he affirmed that he was pleading guilty knowingly and voluntarily, suggest otherwise.  "[A]n appropriately conducted Rule 11 proceeding raises a strong presumption that the plea is final and binding." United States v. Wilson, 81 F.3d 1300, 1306 (4th Cir. 1996) (citing United States v. Puckett, 61 F.3d 1092, 1099 (4th Cir. 1995)).  Petitioner was clearly on notice of the potential penalties for the crime to which he pleaded guilty by the statement in the plea agreement that he signed.  After being informed again of the maximum punishment allowable for the offense with which he was charged, petitioner affirmed to this court that he understood the seriousness of the punishment.  Petitioner has offered no evidence in support of his conclusory assertion that his plea was not knowing and not voluntary.  Petitioner has therefore failed to demonstrate the first prong of the Moore test.

As previously noted, petitioner has admitted that he is not innocent of the crime of which he was convicted.  He argues, however, that he has the right to have a jury of 12 of his peers determine whether he is guilty or not.  While petitioner at one time possessed the right to a trial by jury, he relinquished that right voluntarily when he accepted the plea agreement with the United States and this court accepted his guilty plea.  He therefore does not meet the second prong of Moore.

That petitioner was dilatory in requesting to withdraw his guilty plea is certain.  Although petitioner claims that because he filed his petition under 18 U.S.C. 2255 within one year of his conviction becoming final, the timing issue cannot be used against him, his delay of ten months in light of the context of Moore is extremely long.  See Moore, 931 F.2d at 248 (describing the defendant's six-week delay as "long").

Although petitioner has also alleged that his counsel provided him ineffective assistance, this court has determined that his attorney's assistance to him was within the range of competent assistance.  The fourth prong of <u>Moore</u>, therefore, weighs against petitioner.  The fifth and sixth prongs of <u>Moore</u>, additionally, are not satisfied by petitioner's arguments.  There is no doubt that granting to petitioner his request would only result in a tremendous waste of resources.  Were he to be permitted to withdraw his guilty plea, petitioner might proceed to trial, in which case, as noted in the discussion of his claims of ineffective assistance of counsel, he would likely face a sentence of imprisonment that is significantly longer than the one which he is currently serving. In all likelihood, however, petitioner would reach another plea agreement with the government, and the chance of his sentence being any more favorable to him under a new agreement than the one he is currently serving are virtually nonexistent.  It is clear that granting petitioner's request would only result in unnecessary litigation and a waste of judicial resources.

Petitioner cannot demonstrate that any of the factors outlined by the court in <u>Moore</u> weigh in his favor.  Accordingly, his request for permission to withdraw his guilty plea is denied.


**V.      Conclusion**

For the reasons stated on the record, and for those discussed above, the petition is **DENIED** and **DISMISSED**.  Finding no substantial issue for appeal concerning the denial of a constitutional right affecting the conviction, nor a debatable procedural ruling, a certificate of appealability is **DENIED**.

The Clerk is **REQUESTED** to send a copy of this Order to the petitioner, to his counsel, and to United States Attorney, Eastern District of Virginia, World Trade Center, Suite 1800, 101

West Main Street, Norfolk, Virginia 23510 .

The plaintiff is **ADVISED** that he may appeal from this final Order by forwarding a

written notice of appeal to the Clerk of the United States District Court, United States

Courthouse, 600 Granby Street, Norfolk, Virginia 23510.  Said written notice must be received

by the Clerk within sixty (60) days from the date of this Order.

It is so **ORDERED**.

_____
/s/
Jerome B. Friedman
UNITED STATES DISTRICT JUDGE

June 15, 2005
Norfolk, Virginia